IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

ZACKERY J. WITVOET,
    Plaintiff,

v.

BIG IRON AUCTION COMPANY,
    Defendant.

Case No. 1:24-cv-1345

**Order**

Now before the Court is the Defendant, Big Iron Auction Company's Motion for Summary Judgment (D. 16) against the Plaintiff, Zackery J. Witvoet.[1] For the reasons set forth below, the Defendant's Motion is denied.

**I**

On March 23, 2026, the Defendant filed the pending Motion. (D. 16). On April 10, 2026, the Plaintiff responded (D. 17), to which the Defendant timely replied. (D. 18). The matter is therefore fully briefed.

**II**

This case centers on the Plaintiff's allegations that the Defendant twice refused to promote him, then ultimately eliminated his position and paid him less than three of his co-workers, on the basis of his divorce proceedings.

**A**

The Defendant hired the Plaintiff in October of 2019 as a district sales manager. In the Fall of 2022, the Plaintiff applied internally for a regional manager position with Defendant's Midwest Region, which included Illinois, Iowa,

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Missouri, Minnesota, and Wisconsin. A few months prior, in August of 2022, the Defendant acquired Sullivan Auctioneers LLC ("Sullivan"). Ultimately, allegedly due to its acquisition of Sullivan, the Defendant did not hire anyone for that Midwest regional manager position.

Instead, the Defendant redrew its regions; the Midwest region was reduced to only Illinois and Missouri. About a month after his initial application, the Plaintiff once again applied internally to be regional manager of the Defendant's new Midwest region. Rather than promoting the Plaintiff, the Defendant hired as regional manager Cody Holst, who was employed with Sullivan prior to the August 2022 acquisition.

Nearly a year later, "[a]round Labor Day weekend in 2023," Mr. Holst (who became the Plaintiff's supervisor) informed the Plaintiff that the Defendant was eliminating the Plaintiff's current position. (D. 16 at ECF p. 5). In turn, "Mr. Holst offered Plaintiff continued affiliation with [the Defendant] as an independent sales representative." *Id*. In response, the Plaintiff requested that he instead "be considered for an internal territory manager position," rather than being an independent sales representative. *Id*. The Defendant "accepted Plaintiff's counterproposal and offered him employment with [the Defendant] as a territory manager with a base compensation of $50,000 per year." *Id*.

**B**

Against the backdrop of the Plaintiff's employment relationship with the Defendant loomed his marriage, divorce, and re-marriage. In 2012 or 2013, the Plaintiff began his first marriage. On August 18, 2022, the Plaintiff filed a petition for dissolution of marriage, and finalized the divorce on February 22, 2023. Then, on August 13, 2023, the Plaintiff married his second wife, to whom he remains married.

2

The Plaintiff contends that his divorce played a role in the Defendant's decision making. Specifically, the Plaintiff testifies that Mr. Kipper, the Defendant's Director of Equipment Sales, told the Plaintiff that he would not be promoted in 2022 "because you are getting divorced." (D. 16-1 at ECF p. 37:3–4). Moreover, the Plaintiff avers that when his position was terminated in 2023, three of his comparators—all of whom were married and also had their positions terminated—were offered superior titles for $80,000 per year (as opposed to the Plaintiff's inferior title for $50,000 per year). And while the Plaintiff was technically remarried by the Fall of 2023, he alleges that the Defendant's perception of his divorce still lingered heavily in the decision to terminate his position and, effectively, demote him.

Consequently, the Plaintiff filed the pending, one-count Complaint for Discrimination on the Basis of Marital Status in violation of the Illinois Human Rights Act ("IHRA"). (D. 1-1 at ECF p. 4). In the instant Motion, the Defendant seeks summary judgment against the Plaintiff's claim, arguing that there exists no evidence that the Defendant considered the Plaintiff's marital status or divorce proceedings when making employment decisions. The Plaintiff, of course, disagrees, and argues that there exists a question of fact as to whether the Defendant considered the Plaintiff's divorce when it denied him promotions and reduced his pay.

### III

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must

come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250. "The same standard applies when considering cross-motions for summary judgment." *City of Chi. v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (citing *Int'l Bhd. of Elec. Workers, Loc. 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)).

4

Therefore, while considering the Defendant's, the Court views all the evidence in the light most favorable to the Plaintiff. *Id.*

## IV

The Defendant seeks summary judgment on two separate bases. First, it argues that the Plaintiff is not a member of a protected class, because during his employment with the Defendant, he was married, divorced, then remarried. Second, even if the Plaintiff is in a protected class, the Defendant argues that he cannot establish disparate treatment. The Court will address in turn each of these arguments.

## A

The Court, sitting in diversity jurisdiction, will apply Illinois' substantive law (i.e., the IHRA). Under the IHRA, "unlawful discrimination" is "discrimination against a person because of his or her actual or perceived: race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, sexual orientation, or unfavorable discharge from military status." *Zimny v. Dart*, No. 12 C 5963, 2014 WL 7176623, at *1 (N.D. Ill. Dec. 15, 2014) (quoting 775 Ill. Comp. Stat. 5/1–103(Q)). The IHRA further defines "marital status" as "the legal status of being married, single, separated, divorced, or widowed." 5/1-103(J).

Here, the Defendant argues that the Plaintiff does not merit protection under the "marital status" category. This is because, the Defendant argues, the Plaintiff was married, divorced, and remarried during his employment with the Defendant. Consequently, it is unclear, the Defendant argues, which protected category the Plaintiff seeks, and in what way he would be entitled to that protection.

The Plaintiff, meanwhile, asserts that when he filed his first two promotion applications (in Fall of 2022), he had already filed a Petition for Dissolution of

5

Marriage (August 18, 2022). Consequently, during that time, the Plaintiff was "separated," which is protected by the IHRA. Further, when the Plaintiff's position was eliminated in the Fall of 2023, the Plaintiff argues that—even though he was technically remarried—the Defendant squarely considered his divorce history.

The Court finds that the Defendant has failed to carry its burden that, as a matter of law, no reasonable jury could find that the Plaintiff is protected by the IHRA. As an initial matter, it is hard to dispute that the Plaintiff was "separated" at the time of his 2022 promotion applications. He had already petitioned for the dissolution of marriage and, a few months later, finalized his divorce. Further, the elimination of the Plaintiff's position—which occurred around Labor Day of 2023—came only 6-7 months after his divorce was finalized (February 22, 2023), and only about one month after he was remarried. Surely, then, drawing all reasonable inferences in favor of the Plaintiff, a reasonable jury could conclude that the Defendant could have discriminated against the Plaintiff for being "separated" or "divorced" around Labor Day of 2023. This is especially true where the IHRA describes protected characteristics as "actual *or perceived*". 775 Ill. Comp. Stat. 5/1–103(Q) (emphasis added). In other words, even though the Plaintiff's "actual" marital status had changed, the Defendant still clearly could have "perceived" him as divorced or separated based on the events that transpired in the Fall of 2022.

In sum, based on the timeline of the Plaintiff's divorce proceedings and the Defendant's alleged consideration of those proceedings, a reasonable juror certainly could conclude that he was protected under the IHRA as "separated" and/or "divorced" from approximately Fall 2022 through Fall 2023. The Defendant has failed to carry its burden to the contrary. Accordingly, the Defendant's Motion is denied on this score.

6

**B**

Next, the Defendant argues that the Plaintiff fails to establish disparate treatment. In support, the Defendant asserts that there were no similarly-situated employees who were treated more fairly than the Plaintiff. In regard to the first promotion application, the Defendant argues that it did not hire anyone for that position, and thus no other employee was treated more favorably. As to the second promotion, the Defendant avers that it hired Mr. Holst for "political" reasons — specifically, that the Defendant wanted to hire a member of the newly-acquired Sullivan to a leadership position. And as to the elimination of the Plaintiff's position, the Defendant argues that the Plaintiff's married co-workers are not comparators, because the Plaintiff, too, was remarried by then. Accordingly, the Defendant concludes that it did not treat any employee more favorably than the Plaintiff on the basis of his divorce proceedings.

In response, the Plaintiff points to his deposition, in which he testifies that Defendant explicitly considered the Plaintiff's divorce when denying his promotion application. Further, the Plaintiff argues that similarly-situated employees — the Plaintiff's co-workers who, after their positions were eliminated, were offered $80,000 per year as opposed to the Plaintiff's $50,000 — were treated more favorably and were all "married and had not recently undergone a divorce." (D. 17 at ECF p. 14).

When weighing this claim, "the sole question that matters" is "[w]hether a reasonable juror could conclude that [the Plaintiff] would have [avoided an adverse employment action if he had a different [marital status], and everything else had remained the same." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016) (citing *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997)). In other words, the Court answers the question of "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex,

religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. To answer that question, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself". *Id.*

1

The Court will first consider the 2022 promotion applications before evaluating the Defendant's comparator argument. As to the promotion applications, the Plaintiff has produced a genuine dispute of fact as to whether his marital status was considered when the Defendant twice passed up the Plaintiff then hired Mr. Holst. The Defendant—who holds the burden to foreclose any genuine factual disputes—relies on only two pieces of evidence: (1) that the Plaintiff was not promoted for a legitimate, non-discriminatory reason (i.e., for "political" reasons after the acquisition of Sullivan), and (2) a sworn affidavit from Mr. Kipper that he "made no representation to Plaintiff either concerning his marital status or that such status precluded him in any way from obtaining a promotion within Big Iron." (D. 18-1 at ECF p. 2). The Plaintiff, meanwhile, provides competing, sworn deposition testimony that, when the Defendant denied his 2022 promotion, Mr. Kipper "said you are not fit for this position because of your current status and the fact that you … are going through a divorce." (D. 16-1 at ECF p. 8). This is despite Mr. Kipper allegedly telling the Plaintiff that, otherwise, "[o]n all fronts, you are a perfect fit." (*Id.* at ECF p. 10).

This competing evidence creates a genuine dispute of fact as to whether the Defendant considered the Plaintiff's divorce when the Defendant denied the Plaintiff's promotion applications, or whether the Defendant truly did so for a legitimate, non-discriminatory reason. Granted, the Plaintiff's testimony is clearly self-serving. But, at summary judgment, "'self-serving' testimony is an acceptable method for a nonmoving party to present evidence of disputed material facts."

8

*Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). That is especially true where (1) the self-serving testimony is borne from personal knowledge, and (2) the Defendant—who, again, holds the burden—provides little more than a competing sworn statement from Mr. Kipper in its reply. The Defendant did not, for example, provide evidence that the Plaintiff was a poor employee, that the Plaintiff's testimony is verifiably untruthful, or any other evidence that sufficiently carries its burden and nullifies the Plaintiff's testimony. The Defendant does argue that, when the Plaintiff was not promoted in 2022, he acknowledged that "it was something to do with the [finalization of the] acquisition of Sullivan". (D. 16-1 at ECF p. 8). But this ignores that only moments later, the Plaintiff testified that Mr. Kipper explicitly mentioned the Plaintiff's "divorce proceedings" as a rationale for the rejection. *Id*. Thus, the Defendant does not foreclose—but highlights—a factual dispute as to the true motivation for the denial of the Plaintiff's applications.

Of course, the Defendant contests that the Plaintiff's deposition testimony is truthful. But evaluating the veracity of testimony is a job for cross-examination at trial—not summary judgment. Given that the Plaintiff has provided sworn deposition testimony that the Defendant considered his divorce proceedings, and absent evidence from the Defendant to carry its hefty burden and override the Plaintiff's testimony, a jury must decide whether they believe the Plaintiff or the Defendant. *See, e.g., Johnson*, 892 F.3d at 901 ("The defendants argue that the plaintiffs have little admissible evidence to support assertions that supervisors used racially derogatory language. This is not so. The plaintiffs cited to deposition testimony and sworn declarations in which the plaintiffs testified that they heard racially derogatory language. Nothing more is required on summary judgment."); *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (internal citations omitted) ("If there is sufficient evidence for a jury to return a verdict for the non-

9

moving party, a genuine issue of material fact exists. … If based on personal knowledge or firsthand experience, [self-serving] testimony can be evidence of disputed material facts. It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony; we leave those tasks to factfinders."); *Howard v. Inland SBA Mgmt. Corp.*, 32 F. Supp. 3d 941, 961 (N.D. Ill. 2014) ("Defendants urge the Court to discount the 'self-serving' testimony of Day, since her affidavit was created in response to Defendants' 56.1 statements and (presumably) because, subsequent to Howard's dismissal, Day herself complained of discrimination, was fired from SomerCor, and brought a Title VII retaliation suit against the same defendants. But Day's deposition testimony is consistent with her affidavit, which is largely duplicative. And besides, it is not for the Court to assess credibility or weigh the evidence at summary judgment. That is the job of the factfinder at trial with the aid of tools of the adversary process such as cross-examination."); *Blue v. Int'l Bhd. of Elec. Workers--Loc. 159*, No. 09-CV-395-WMC, 2011 WL 13359246, at *3 (W.D. Wis. Feb. 3, 2011), *aff'd sub nom.*, 676 F.3d 579 (7th Cir. 2012) ("Contrary to Local 159's unsupported position, the mere fact that testimony was self-serving does not require the jury to give it less weight, much less find it inherently unreliable. …  In the main, Blue's testimony was based on her first-hand experience and was, therefore, enough to survive summary judgment ….").

### 2

And the Defendant's argument that the Plaintiff has failed to identify comparators also fails. The Defendant argues that because the Plaintiff was technically married in the Fall of 2023, the Plaintiff's use of married comparators is ineffective; after all, in Fall 2023, the Plaintiff and his co-workers all were technically married. But as the Court analyzed *supra* (in Section IV(A)), a reasonable juror certainly could conclude that—while the Plaintiff was technically

remarried—the Defendant still "perceived" the Plaintiff as separated or divorced based on Mr. Kipper's alleged comments. And the Defendant fails to present evidence, or even argument, that in terms of position, qualifications, and/or job performance, the Plaintiff's three co-workers were not adequate comparators. *Cf. Rehm v. Young Mens Christian Ass'n of Greater Waukesha Cnty., Inc.*, 760 F. Supp. 3d 727, 737 (E.D. Wis. 2024) ("Given the difference in job responsibilities and the lack of comparable experience, education and other qualifications, a reasonable jury could not find that Mertens is a fair comparator on whom to base the plaintiff's pay discrimination claim."). Indeed, based on what the parties have provided the Court, the Plaintiff's three comparators appear to have been in identical positions (district mangers), "reported to the same regional management structure," and "were subject to the same employment standards". (D. 17 at ECF p. 14). The Defendant's argument (devoid of evidence) that the three co-workers are not proper comparators is thus unpersuasive. *See Melgoza v. Rush Univ. Med. Ctr.*, 499 F. Supp. 3d 552, 566–67 (N.D. Ill. 2020) (finding co-workers to be comparators where the employees' positions were similar "as to skill, effort and responsibility", they "worked under similar working conditions", and shared "a common core of tasks").

Accordingly, the Defendant's Motion is denied, as there exists a genuine dispute of fact as to whether the Defendant considered the Plaintiff's marital status when denying the Plaintiff's promotion applications in 2022 and providing the Plaintiff with a lesser role and compensation than his comparators in 2023.

## V

For the reasons set forth above, the Defendant's Motion for Summary Judgment (D. 16) is denied. This matter is referred to the Magistrate Judge for a settlement conference. If necessary, the Court will set pretrial deadlines and trial dates after conclusion of the settlement conference.

Should a party file a motion for reconsideration that is subsequently denied by the Court, the party filing the motion will be responsible for the attorneys' fees of the opposing party, related to their response to the motion for reconsideration.

*It is so ordered.*

Entered on May 7, 2026

<u>s/Jonathan E. Hawley</u>
U.S. DISTRICT JUDGE